IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| JESSE LILES, *et al.*, <br> Plaintiffs, <br><br> v. <br><br> TH HEALTHCARE, LTD, *et al.*, <br> Defendants. | § <br> § <br> § <br> §    CASE NO. 2:11-cv-528-JRG <br> § <br> § <br> § <br> § <br> § |

**MEMORANDUM OPINION AND ORDER**

**I.**    **Introduction**

The following Motions are currently pending before the Court in the above-captioned healthcare liability case: (1) Holly Babb ("Babb") and Dave Marshall's ("Marshall") 12(b)(6) Motion to Dismiss and Motion to Transfer Venue Subject Motion to Dismiss (Dkt. No. 11); (2) TH Healthcare Limited f/k/a Tenet Healthcare Limited ("TH Healthcare") and Lifemark Hospitals' ("Lifemark") Partial 12(b)(6) Motion to Dismiss (Dkt. No. 12); (3) Defendants Joy Smothers ("Smothers"), Tim Magness ("Magness") and Sandra Williams' ("Williams") 12(b)(6) Motion to Dismiss (Dkt. No. 13); (4) Babb and Marshall's Motion to Change Venue (Dkt. No. 17); (5) Lifemark and TH Healthcare's Motion to Change Venue (Dkt. No. 18); (6) Magness and Smothers' Motion to Change Venue (Dkt. No. 19); (7) Douglas Ferguson ("Ferguson") and Edward Stephens' ("Stephens") Rule 12(b)(6) Motion to Dismiss (Dkt. Nos. 28 and 70); (8) Apogee Medical Group, Texas, P.A. ("Apogee") 12(b)(6) Motion to Dismiss (Dkt. No. 30); (9) Mustafa Sardini's ("Sardini") 12(b)(6) Motion to Dismiss (Dkt. No. 31); (10) Vigram C. Suraparaju ("Suraparaju"), Jaidev Bhoopal ("Bhoopal") and Tracy Hernandez ("Hernandez") 12(b)(6) Motion to Dismiss (Dkt. No. 32); (11) Apogee's Motion to Change Venue (Dkt. No. 44);

(12) Sardini's Motion to Change Venue (Dkt. No. 45); (13) Supaparaju, Bhoopal and Hernandez's Motion to Change Venue (Dkt. No. 46); (14) James Young's ("Young") Motion to Dismiss for Failure to State a Claim and in the Alternative Motion to Transfer Venue (Dkt. No. 56); and (15) Forest Country Emergency Physicians' ("Forest Country") 12(b)(6) Motion to Dismiss (Dkt. No. 69).

## II.     Factual and Procedural Background

Plaintiffs Jesse Liles ("Liles") and his wife, Christie Liles (collectively, "Plaintiffs"), brought this healthcare action against TH Healthcare and Lifemark Hospitals, in their capacity as owners of the Nacogdoches Medical Center, under 42 U.S.C. § 1395 and allege violations of the Federal Emergency Medical Treatment and Active Labor Act ("EMTALA"). Plaintiffs base this action on two separate, but related, hospitalizations: December 28, 2009 through January 24, 2010; and January 26, 2010 through January 27, 2010. Plaintiffs also raise several state law tort claims against sixteen individual Defendants (mostly Doctors and Nurses associated with the Nacogdoches Medical Center) and argue that this Court has supplemental jurisdiction over such state law tort claims pursuant to 28 U.S.C. § 1367.

On December 28, 2009, Liles – who is uninsured – came to the Nacogdoches Medical Center (the "Hospital") complaining of fever, cough and shortness of breath and was later that day admitted to the hospital as having severe dehydration and lung disease. (Compl. ¶ 24a.) During the course of Liles treatment at the Nacogdoches Medical Center, it was determined that he suffered from bilateral pneumonia, Adult Respiratory Distress Syndrome ("ARDS") and significant lung damage. *Id*.

Plaintiffs contend that over the next several days, while Liles condition was at all times unstable, various Doctors and Nurses associated with the Nacogdoches Medical Center attempted

to transfer him out of the hospital on eighteen separate occasions because Liles did not have health insurance. *Id*. Plaintiffs allege that on December 31, 2009, two of Lile's Doctors, Defendants Suraparaju and Hernandez, falsely certified that he was stable for transfer from the hospital. (Compl. ¶24b.) At 3:35 am, on January 1, 2010, EMS personnel arrived to collect Liles from the Nacogdoches Medical Center. (Compl. ¶24c.) At or near the time he was placed into the ambulance, Liles went into cardiac arrest. He was resuscitated in the ambulance by EMS personnel and brought back to inside the Nacogdoches Medical Center where he was placed on a ventilator in the ICU. *Id*. Liles remained at Nacogdoches Medical Center until January 24, 2010, at which time he was discharged to his home. (Compl. ¶24e.) Plaintiffs contend that this discharge was improper under EMTALA because his condition was unstable.

On January 26, 2010, just two days after the initial discharge from the hospital, Liles medical condition deteriorated and he was again transported by ambulance to the Nacogdoches Medical Center. (Compl. ¶25a.) Plaintiffs allege that Nacogdoches Medical Center refused to admit Liles for treatment on the grounds that there was "no pulmonologist" available to evaluate and treat him at the hospital. *Id*. Personnel at Nacogdoches thereafter made a number of calls to potential "receiving hospitals" to identify a facility capable of accommodating Liles needs. *Id*. Plaintiffs contend that doctors and nurses Nacogdoches Medical Center fraudulently classified Liles condition as "stable" and transferred him to East Texas Medical Center Tyler ("ETMC Tyler") as a cardiac patient. *Id*. Upon arriving at ETMC Tyler, Liles was admitted to the ICU and a medical examination uncovered that Liles was suffering from significant lung damage, and that "[h]is lung has been collapsed to some degree for quite some time…" (Compl. ¶26.) On January 29, 2010 ETMC Tyler physicians performed surgery on Liles to repair his lung. *Id*.

Plaintiffs contend that over the course of both of Lile's trips to the Nacogdoches Medical Center he suffered from a life threatening illness which physicians and nurses at Nacogdoches Medical Center failed to diagnose, mistreated and tried to cover up at the time of his transfers. Plaintiffs contend that they are entitled to damages from the owner of Nacogdoches Medical Center for violation of EMTALA, and from the other named Defendants for conspiracy to violate EMTALA, fraud, and Texas state law tort claims.

## III. Governing Law

### A. Federal Rule of Civil Procedure 12

By written motion, a party may move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When reviewing a motion to dismiss, courts look only to the allegations in the complaint to determine whether they are sufficient to survive dismissal. *See Jones v. Bock,* 549 U.S. 199, 215 (2007).

The Supreme Court has held that a complaint does not need detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, but the pleader's obligation to state the grounds of entitlement to relief requires "more than labels and conclusions." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). The well-pleaded facts must permit the court to infer more than just the mere possibility of misconduct. *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009). In the Fifth Circuit, motions to dismiss under Rule 12(b)(6) are viewed with disfavor and are rarely granted. *Lormand v. US Unwired, Inc.,* 565 F.3d 228, 232 (5th Cir. 2009); *Lowrey v. Texas A&M Univ. Sys.,* 117 F.3d 242, 247 (5th Cir. 1997).

There are two guiding principles in determining whether a complaint can survive a motion to dismiss. *Iqbal,* 129 S. Ct. at 1949-50. "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare

recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Second, a complaint must state a plausible claim in order to survive a motion to dismiss. *Id.* This second determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but is has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).

    **B.**    **EMTALA**

42 U.S.C. § 1395dd, The Emergency Medical Treatment and Active Labor Act ("EMTALA"), which is sometimes referred to as the "anti-dumping" statute, was "passed in 1986 in response to the growing concern that hospitals were dumping patients who could not pay by either turning them away from their emergency rooms or transferring them before their emergency conditions were stabilized." *Miller v. Medical Center of S.W. Louisiana*, 22 F.3d 626, 628 (5th Cir. 1994). The statute requires that a hospital conduct appropriate screening procedures for any individual who presents to its emergency department and, if any emergency condition is found to exist, "the hospital must either provide sufficient treatment to stabilize the patient or transfer the patient in accordance with the strictures of the statute." *Id*. (citing 42 U.S.C. § 1395dd). Hospitals covered by this statute include those with emergency room departments that execute Medicare provider agreements with the federal government pursuant to 42 U.S.C. § 1395cc. *Id.* Liability under EMTALA is imposed upon the hospital by the acts of the hospital's doctors, nurses and other personnel, but EMTALA does not impose liability beyond the hospital to the individuals themselves. 42 U.S.C. § 1395dd(d)(2).

**IV.** **Analysis**

There are fifteen separate motions to dismiss and/or motions to transfer venue pending in this case and many of the arguments presented in the various motions substantially overlap. Essentially the Defendants' primary contentions coalesce around a few key issues. While, to preserve the clarity of the record, the Court will address each of the motions below, the Court first summarizes the parties' primary arguments and its ruling regarding the same:

(1) Motions to Dismiss EMTALA claims against the Hospital arising from the first hospitalization: **DENIED**, because the Complaint pleads sufficient facts to demonstrate that Liles was never stabilized before discharge;

(2) Motions to Dismiss EMTALA claims against the non-hospital defendants: **GRANTED**, because, as Plaintiff concedes, an EMTALA claim only survives as to the Hospital;

(3) Motions to Dismiss supplemental state law claims: **DENIED**, because the Court opts to exercise supplemental jurisdiction over those claims pursuant to 28 U.S.C. § 1367;

(4) Motions to Dismiss civil conspiracy claims: **DENIED**, because the Complaint pleads sufficient facts to state a plausible claim for civil conspiracy; and

(5) Motions to Transfer Venue: **DENIED**, because Defendants have not shown that the Lufkin Division of the Eastern District of Texas is a "clearly more convenient forum" than the Marshall Division.

## A. TH Healthcare and Lifemark's Partial 12(b)(6) Motion to Dismiss (Dkt. No. 12)

On February 10, 2012, TH Healthcare and Lifemark filed a partial[1] 12(b)(6) motion to dismiss Plaintiff's EMTALA claims arising out of his visit to the Nacogdoches Medical Center from December 28, 2009 through January 24, 2010 (the "first visit") on the grounds that Liles "was admitted in good faith as a bona fide inpatient during the first hospitalization (from December 28, 2009 – January 24, 2010), thereby rendering EMTALA inapplicable for this portion of Plaintiff's claim." (Dkt. No. 12, at 2.) TH Healthcare and Lifemark note that there is currently a split among the circuits regarding whether EMTALA applies to inpatients and contend that "the Fifth Circuit has not addressed this issue squarely." *Id.* Nevertheless, TH Healthcare and Lifemark ask this Court to dismiss Plaintiff's claims relating to the first visit on such grounds. Alternatively, TH Healthcare and Lifemark argue that, if the Court does not find that inpatient admission is determinative, that Liles was stabilized as a matter of law before discharge on January 24, 2010 and that his claims are barred by the relevant statute of limitations. *Id.* at 3. For the reasons set forth below, the Court **DENIES** the Motion.

> i. *Lile's Inpatient Admission Does Not Bar the EMTALA Claim Because the Complaint Plausibly Pleads Facts to Show that Lile's Medical Condition was Never Stabilized During the First Hospitalization*

The plain language of the EMTALA statute specifically indicates that a hospital may not transfer an individual with an emergency medical condition which has not been "stabilized." 42 U.S.C. § 1395dd(c)(1). The statute defines "stabilized," with respect to an emergency medical condition, to mean "that no material deterioration of the condition is likely, within reasonable medical probability, to result from or occur during the transfer of the individual from a facility." 42 U.S.C. § 1395dd(e)(3)(b). The Fifth Circuit has held that a "hospital's responsibility under the

---

[1] TH Healthcare and Lifemark do not move to dismiss Plaintiff's EMTALA claims relating to Liles' January 26, 2010 – January 27, 2010 visit (the "second visit") to the Nacogdoches Medical Center.

statute ends ***when it has stabilized*** the individual's medical condition." *Green v. Touro Infirmary, et al.,* 992 F.2d 537, 539 (5th Cir. 1993) (emphasis added). None of the cases cited by TH Healthcare and Lifemark persuade the Court that any and all EMTALA claims are barred simply because a patient has been admitted to a hospital as a bona fide inpatient. *See, e.g., Harry v. Marchant*, 291 F.3d 767 (11th Cir. 2002); *Bryant v. Adventist Health Sys. West*, 289 F.3d 1162 (9th Cir. 2002). Rather, the Fifth Circuit appears to have made it clear that the question is whether the Hospital has "stabilized" the individual before transfer. This statute's application does not turn on the <u>administrative status</u> of the patient but on his or her <u>medical status</u>. At this stage of the case, when accepting each of the facts set forth in the Complaint as true and in a light most favorable to the Plaintiffs, the Court necessarily concludes that the Complaint pleads sufficient facts to state a plausible claim that Lile's medical condition was never stabilized (as that term is defined by the statute) at any time during his first visit to the Nacogdoches Medical Center. Accordingly, TH Healthcare and Lifemark's partial motion to dismiss is **DENIED**.

        ii.        *The EMTALA Statute of Limitations Does Not Bar Lile's Claims*

In Texas, a plaintiff must "bring suit" within the applicable limitations period. *Gant v. DeLeon*, 786 S.W.2d 259, 260 (Tex. 1990). Further, "[t]o toll the statute of limitations, a plaintiff must not only file suit within the limitations period, but must also exercise due diligence in procuring the issuance and service of citation." *Id*. Due diligence is usually a question of fact determined by a two-prong test: (1) whether the plaintiff acted as an ordinarily prudent person would have acted under the same or similar circumstances; and (2) whether the plaintiff acted diligently up until the time the defendant was served." *Zacharie v. U.S. Natural Res., Inc.*, 94 S.W.3d 748, 754 (Tex.App. – San Antonio 2002, no pet.).

8

TH Healthcare and Lifemark contend that a two-year statute of limitations bars Plaintiff's EMTALA allegations arising out of the care rendered by the Nacogdoches Medical Center on or before December 28, 2009, because Plaintiff did "not diligently seek service upon Defendants for such treatment and services until *after* December 29, 2011 and did not serve Defendants until January 23, 2010." (Dkt. No. 12, at 3) (citing 42 U.S.C. § 1395dd(d)(2)(C)). According to TH Healthcare and Lifemark, Plaintiffs sought a waiver of service as to the Defendants on December 28, 2009, conclusively demonstrating a lack of diligence in serving process within the requisite statute of limitations. *Id*. (citing *Rodriguez v. Tinsman & Houser, Inc.*, 13 S.W.3d 47, 51 (Tex. App. – San Antonio 1999, pet. denied)).

Plaintiffs respond that this case was filed on December 27, 2011, before the applicable statute of limitations period expired, and "with all due diligence, [Plaintiffs] exercised all methods of service available under the Federal Rules and the Texas State Rules incorporated therein to obtain service on Defendants." (Dkt. No. 50.) Plaintiffs contend that they attempted, through a Texas Certified Process Server, to serve each of the individual Defendants at their place of employment or residence. *Id*. at 13-14. When this failed, Plaintiffs contacted Counsel for Defendants to pursue acceptance of service or waiver of summons. *Id.*

Plaintiffs filed this case on December 27, 2011, within the two-year statute of limitations period and the evidence before the Court demonstrates that Plaintiff was diligent in securing service of the Complaint on the various Defendants in this case, including TH Healthcare and Lifemark. Accordingly, the Motion to Dismiss on this ground is **DENIED**.

### iii. *Motion to Dismiss Supplemental State Law Claims Arising from the First Hospitalization*

TH Healthcare and Lifemark contend that "without a statutory basis for Plaintiffs' EMTALA federal question jurisdiction, Plaintiff's pendant state law claims arising from the first hospitalization must also be dismissed for lack of subject matter jurisdiction." (Dkt. No. 12.) As discussed above, the Court declines to dismiss Plaintiffs' EMTALA claim related to the first hospitalization. Accordingly, the Court is within its discretion to exercise supplemental jurisdiction over the related state law claims stemming from the first hospitalization. The Motion to Dismiss on this ground is **DENIED**.

### B. *TH Healthcare and Lifemark's Motion to Transfer Venue (Dkt. No. 18)*

TH Healthcare and Lifemark move to transfer this case to the Lufkin Division for the Eastern District of Texas pursuant to 28 U.S.C. § 1404(a) on the grounds that the Lufkin Division is a "clearly more convenient" forum than the Marshall Division. Specifically, TH Healthcare and Lifemark argue that most of the witnesses relevant to this case work at the Nacogdoches Medical Center, which is located within the Lufkin Division, and is closer to the Lufkin courthouse than the Marshall Courthouse. (Dkt. No. 18.)

Change of venue is governed by 28 U.S.C § 1404(a). Under § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district court or division where it might have been brought." 28 U.S.C. § 1404(a). But a motion to transfer venue should only be granted upon a showing that the transferee venue is "clearly more convenient" than the venue chosen by the plaintiff. *Nintendo*, 589 F.3d at 1197; *Genentech*, 566 F.3d at 1342; *TS Tech.*, 551 F.3d at 1319; *Volkswagen II*, 545 F.3d at 315.

A threshold question in applying the provisions of § 1404(a) is whether the suit could have been brought in the proposed transferee district. *In re Volkswagen AG* (*Volkswagen I*), 371 F.3d 201, 203 (5th Cir. 2004). If the transferee district is a proper venue, then the court must weigh the relative conveniences of the current district against the transferee district. *Id.* In making the convenience determination, the Fifth Circuit considers several "private" and "public" interest factors, none of which are given dispositive weight. *Id.* The "private" interest factors include: "(1) the cost of attendance for willing witnesses; (2) the relative ease of access to sources of proof; (3) the availability of compulsory process to secure the attendance of witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Nintendo*, 589 F.3d at 1198; *Genentech*, 566 F.3d at 1342; *TS Tech.*, 551 F.3d at 1319; *Volkswagen II*, 545 F.3d at 315. The "public" interest factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [in] the application of foreign law." *Nintendo*, 589 F.3d at 1198; *Genentech*, 566 F.3d at 1342; *TS Tech.*, 551 F.3d at 1319; *Volkswagen II*, 545 F.3d at 315.

Finally, the Court is allowed greater deference when considering intra-district transfers. *Madden v. City of Wills Point,* 2:09-cv-250-TJW, 2009 U.S. Dist. LEXIS 116682, at *7 (E.D. Tex. Dec. 15, 2009). The Federal Rules of Civil Procedure allow significant discretion to district courts in deciding the place of trial, so long as it is within the same district, even without the consent of the parties. *Morrow v. Washington,* No. 2:08-cv-288-TJW, 2008 U.S. Dist. LEXIS 100225, at *6 (E.D. Tex. Dec. 11, 2008) (citing Fed. R. Civ. P. 77(b)). Therefore, courts in this district view 1404(a) motions for intra-district transfer of venue with heightened caution. *Rios v. Scott,* No. 1:02-cv-136, 2002 U.S. Dist. LEXIS 28176, at *2 (E.D. Tex. July 26, 2002).

In this case, the Lufkin division is a not a "clearly more convenient" forum than the Marshall division. The Court notes that the "100 mile rule" adopted by the Fifth Circuit does not apply in this case, because the distance from the existing forum (Marshall) is less than 100 miles from the proposed forum (Lufkin). *See In re Volkswagen I*, 371 F.3d at 204-205. Further, most of the witnesses in this case (both party and non-party) work and/or reside in or near Nacogdoches, Texas, which is a relatively short drive from Marshall. Finally, it is highly likely that this case will be resolved more quickly in this Court than in Lufkin, particularly because there is currently no resident District Judge in the Lufkin Division, as there is in Marshall. In sum, each of the §1404a convenience factors are either neutral or weigh against transfer to the Lufkin Division and the Court **DENIES** the Motion to Transfer Venue.

### C. *Babb's and Marshall's Motion to Dismiss Under Rule 12(b)(6) (Dkt. No. 11)*

Babb and Marshall are registered nurses employed by the Nacogdoches Medical Center. Plaintiffs allege the following claims against Babb and Marshall: (1) EMTALA Violations; (2) Civil Conspiracy; (3) Negligence; and (4) Negligence *per se*. Babb and Marshall move to dismiss the EMTALA claims against them and argue that "Plaintiffs' *own* pleadings assert that violations of EMTALA may only be applied to Babb and Marshall's *hospital employer*. (Dkt. No. 11, at 2) (emphasis in original). This point is conceded by Plaintiffs. (*See, e.g.,* Dkt. No. 52, at 6) ("Plaintiffs' admit that the cause of action brought under EMTALA (42 U.S.C. § 1395dd(a)) is a cause of action against the Hospital Defendants only.") In light of this concession, the Court **GRANTS** the Motion to Dismiss as to the EMTLA claims against Babb and Marshall.

Babb and Marshall also move to dismiss the state law claims against them on the grounds that the failure of the EMTALA claim divests the Court of jurisdiction over the state law tort claims. (Dkt. No. 11.) The Court disagrees. As discussed above, the Court does not dismiss the

EMTALA claims arising out of the first and second hospitalizations. (*Supra* IV.A.) Therefore, the Court has the discretion to exercise supplemental jurisdiction over all claims "related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. 1367. Here, all of the claims against Babb and Marshall are part of the same case or controversy associated with the EMTALA claims against the Hospital. Specifically, the issues in this case involve facts and circumstances which are part and parcel of the first and second hospitalizations, including treatment provided to Liles and whether he was "stabilized" before he was discharged. Accordingly, the Court **DENIES** the Motion to Dismiss the state law claims against Babb and Marshall.

### D. *Joy Smothers RT, Tim Magness RN, and Sandra Williams RN Motion to Dismiss (Dkt. No. 13)*

Smothers, Magness and Williams' (a respiratory therapist and ER nurses, respectively) Motion to Dismiss raises nearly identical arguments and relies on nearly identical authorities as Babb and Marshall. For the same reasons and authorities noted above (*Supra* IV.C), the Motion is **GRANTED-IN-PART** and **DENIED-IN-PART**. The Court **DISMISSES** the EMTALA claims against Smothers, Magness and Williams, but **DENIES** the Motion to Dismiss as to the state law claims.

### E. *Babb and Marshall's Motion to Change Venue (Dkt. No. 17)*

Babb and Marshall move to transfer this case to the Lufkin Division for the Eastern District of Texas pursuant to 28 U.S.C. § 1404(a) on the grounds that the Lufkin Division is a "clearly more convenient" forum than the Marshall Division. For reasons and authorities discussed above (*Supra* IV.B.), the Court **DENIES** the Motion because the Lufkin Division is not "clearly more convenient" than the Marshall Division.

### F. *Magness, Smothers and Williams' Motion to Change Venue (Dkt. No. 19)*

Magness, Smothers and Williams also move to transfer this case to the Lufkin Division. Based on the same rationale noted above (*Supra* IV.B), the Court **DENIES** the Motion because the Lufkin Division is not "clearly more convenient" than the Marshall Division.

### G. *Ferguson and Stephens' Rule 12(b)(6) Motion to Dismiss (Dkt. Nos. 28 and 70)*

Ferguson and Stephens move to dismiss certain causes of action as allegedly failing to state a claim upon which relief can be granted. Specifically, Ferguson and Stephens move to dismiss (1) the EMTALA claims because they cannot be brought against an individual physician and (2) the civil conspiracy claims on the grounds that Plaintiffs have failed to state any facts in support of a cause of action for conspiracy against Defendants. As discussed above, Plaintiffs concede that the EMTALA claims cannot be asserted against individuals. Accordingly, the Court **GRANTS-IN-PART** the Motion to Dismiss on this ground and **DISMISSES** the EMTALA claims against Ferguson and Stephens.

With regard to the civil conspiracy claims, the Court finds that the Complaint does plead facts sufficient to state a claim with regard to civil conspiracy. Specifically, the Complaint alleges facts that would demonstrate that Ferguson and Stephens conspired with others to transfer Liles in an unstable condition by changing his diagnosis from "acute unstable pulmonary condition to a stable pre-MI (heart attack) condition." (Compl., ¶32.) When taken as true and in connection with the other allegations set forth in the Complaint, a legitimate question is raised as to whether the Defendants conspired to violate EMTALA by intentionally misrepresenting that Lile's condition was "stabilized," when it was not. The Court **DENIES** the Motion to Dismiss the civil conspiracy claims with regard to Ferguson and Stephens.

### H. *Apogee Medical Group, Texas, P.A.'s Rule 12(b)(6) Motion to Dismiss (Dkt. No. 30)*

Apogee Medical Group, Texas, P.A. ("Apogee") moves to dismiss Plaintiffs claims for substantially the same reasons as discussed above with regard to Babb and Marshall (*Supra* IV.C.). For the same reasons and authorities stated above, the Motion is **GRANTED-IN-PART** in that the Court dismisses the EMTALA claims against Apogee, but it is **DENIED-IN-PART** with respect to the other state law claims against Apogee.

### I. *Mustafa Sardini's Rule 12(b)(6) Motion to Dismiss (Dkt. No. 31)*

Mustafa Sardini ("Sardini") moves to dismiss Plaintiffs claims for substantially the same reasons as discussed above with regard to Babb and Marshall (*Supra* IV.C.). Relying upon the reasons and authorities stated above, the Motion is **GRANTED-IN-PART** in that the Court dismisses the EMTALA claims against Sardini, but it is **DENIED-IN-PART** with respect to the state law claims against Sardini.

### J. *Vikram Suraparaju, Jaidev Bhoopal and Tracy Hernandez's Rule 12(b)(6) Motion to Dismiss (Dkt. No. 32)*

Vikram Suraparaju ("Suraparaju"), Jaidev Bhoopal ("Bhoopal") and Tracy Hernandez ("Hernandez") move to dismiss Plaintiffs claims for substantially the same reasons as discussed above with regard to Babb and Marshall (*Supra* IV.C.). Relying upon the reasons and authorities stated above, the Motion is **GRANTED-IN-PART** in that the Court dismisses the EMTALA claims against Suraparaju, Bhoopal and Hernandez, but it is **DENIED-IN-PART** with respect to the other state law claims.

### K. *Apogee Medical Group, Texas, P.A.'s Motion to Transfer Venue (Dkt. No. 44)*

Apogee moves to transfer this case to the Lufkin Division. Relying upon the reasons and authorities discussed above (*Supra* IV.C), the Court **DENIES** the Motion because the Lufkin Division is not "clearly more convenient" than the Marshall Division.

### L. Mustafa Sardini's Motion to Transfer Venue (Dkt. No. 45)

Sardini moves to transfer this case to the Lufkin Division. Relying upon the reasons and authorities discussed above (*Supra* IV.C), the Court **DENIES** the Motion because the Lufkin Division is not "clearly more convenient" than the Marshall Division.

### M. Vikram Suraparaju, Jaidev Bhoopal and Tracy Hernandez's Motion to Transfer Venue (Dkt. No. 46)

Suraparaju, Bhoopal and Hernandez move to transfer this case to the Lufkin Division. Relying upon the reasons and authorities discussed above (*Supra* IV.C), the Court **DENIES** the Motion because the Lufkin Division is not "clearly more convenient" than the Marshall Division.

### N. James Young's Rule 12(b)(6) Motion to Dismiss (Dkt. No. 56)

Young moves to dismiss Plaintiffs claims for substantially the same reasons as discussed above with regard to Babb and Marshall (*Supra* IV.B). Relying upon the reasons and authorities stated above, the Motion is **GRANTED-IN-PART** in that the Court dismisses the EMTALA claims against Young, but it is **DENIED-IN-PART** with respect to the other state-law claims.

### O. Forest Country Emergency Physicians' 12(b)(6) Motion to Dismiss (Dkt. No. 69)

Forest Country Emergency Physicians ("Forest Country") moves to dismiss certain causes of action as allegedly failing to state a claim upon which relief can be granted. Specifically, Forest Country moves to dismiss (1) the EMTALA claims because they are only applicable to the hospital defendants and (2) the civil conspiracy claims on the grounds that Plaintiffs have failed to state any facts in support of a cause of action for conspiracy against Defendants. As discussed above, Plaintiffs concede that the EMTALA claims can only be asserted against the hospital Defendants. Accordingly, the Court **GRANTS** the Motion to Dismiss on this ground and **DISMISSES** the EMTALA claims against Forest Country. As discussed above concerning Ferguson and Stephens, the Court finds that the Complaint does plead facts sufficient to allege a

plausible claim for civil conspiracy. Therefore, the Court **DENIES** the Motion to Dismiss the civil conspiracy claims with regard to Forest Country.

V.  **Conclusion**

Based upon the reasons and authorities discussed earlier, the following motions are **DENIED**: TH Healthcare Limited f/k/a Tenet Healthcare Limited ("TH Healthcare") and Lifemark Hospitals' ("Lifemark") Partial 12(b)(6) Motion to Dismiss (Dkt. No. 12); Babb and Marshall's Motion to Change Venue (Dkt. No. 17); Lifemark and TH Healthcare's Motion to Change Venue (Dkt. No. 18); Magness and Smothers' Motion to Change Venue (Dkt. No. 19); Apogee's Motion to Change Venue (Dkt. No. 44); Sardini's Motion to Change Venue (Dkt. No. 45); and Suraparaju, Bhoopal and Hernandez's Motion to Change Venue (Dkt. No. 46)

Further, based on the reasons and authorities discussed earlier, the following motions are **GRANTED-IN-PART** and **DENIED-IN-PART** as particularized above: Holly Babb ("Babb") and Dave Marshall's ("Marshall") 12(b)(6) Motion to Dismiss and Motion to Transfer Venue Subject Motion to Dismiss (Dkt. No. 11); Defendants Joy Smothers ("Smothers"), Tim Magness ("Magness") and Sandra Williams' ("Williams") 12(b)(6) Motion to Dismiss (Dkt. No. 13); Douglas Ferguson ("Ferguson") and Edward Stephens' ("Stephens") Rule 12(b)(6) Motion to Dismiss (Dkt. Nos. 28 and 70); Apogee Medical Group, Texas, P.A. ("Apogee") 12(b)(6) Motion to Dismiss (Dkt. No. 30); Mustafa Sardini's ("Sardini") 12(b)(6) Motion to Dismiss (Dkt. No. 31); Vigram C. Supaparaju ("Supaparaju"), Jaidev Bhoopal ("Bhoopal") and Tracy Hernandez ("Hernandez") 12(b)(6) Motion to Dismiss (Dkt. No. 32); James Young's ("Young") Motion to Dismiss for Failure to State a Claim and in the Alternative Motion to Transfer Venue (Dkt. No. 56); and Forest Country Emergency Physicians' ("Forest Country") 12(b)(6) Motion to Dismiss (Dkt. No. 69).

Additionally, the following Motions are **DENIED-AS-MOOT**: Motion for Leave to File Defendants' Reply to Plaintiffs' Surreply (Dkt. No. 78); Opposed Motion for Leave to File Reply Brief to Plaintffs' Response to Defendants' Rule 12(b)(6) Motion to Dismiss (Dkt. No. 79); Motion for Leave to File Reply to Plaintiff's Sur-Reply (Dkt. No. 87); Motion for Leave to File Reply to Plaintiff's Sur-Reply (Dkt. No. 88); Motion for Leave to File Reply to Plaintiffs' Sur-Reply (Dkt. No. 89).

**So ORDERED and SIGNED this 10th day of September, 2012.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE